UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

PERCEPTRON, INC.,

                              Plaintiff,

                                                      5:06-CV-0412
v.                                                    (GTS/DEP)

SILICON VIDEO, INC.; and
PANAVISION IMAGING, INC.,

                              Defendants.
_____

APPEARANCES:                                          OF COUNSEL:

DeFRANCISCO & FALGIATANO LAW FIRM                     JEAN M. WESTLAKE, ESQ.
   Counsel for Plaintiff
121 East Water Street
Syracuse, New York 13202

BUTZEL LONG TIGHE PATTON PLLC                         MICHAEL J. LAVOIE, ESQ.
   Counsel for Plaintiff
150 West Jefferson, Suite 100
Detroit, Michigan 48226-4430

PHILLIPS LYTLE LLP                                    EDWARD S. BLOOMBERG, ESQ.
   Counsel for Defendants
3400 HSBC Center
Buffalo, New York 14203

PHILLIPS LYTLE LLP                                    RICHARD E. HONEN, ESQ.
   Counsel for Defendants
Omni Plaza
30 South Pearl Street
Albany, New York 12207

HON. GLENN T. SUDDABY, United States District Judge

<u>**MEMORANDUM DECISION and ORDER**</u>

Currently pending in this breach-of-contract action is a motion for summary judgment filed by Perceptron, Inc. ("Plaintiff"), and a cross-motion for summary judgment filed by Silicon Video, Inc., and Panavision Imaging, LLC ("Defendants").  (Dkt. Nos. 43, 52.)  For the reasons set forth below, Plaintiff's motion is denied, and Defendants' cross-motion is denied.

**I.    RELEVANT BACKGROUND**

**A.    Plaintiff's Claims**

Generally, in its Complaint, Plaintiff seeks a judgment declaring the rights of the parties with regard to the successor liability of Defendants for an arbitration award granted against non-party Photo Vision Systems, Inc. ("PVS") in favor of Plaintiff in the amount of $2,870,897.43 plus interest.  (*See generally* Dkt. No. 2, Part 1, at 8-15 [Plf.'s Compl.].)  More specifically, Plaintiff alleges that, after PVS breached a contract with Plaintiff in April 2002, but before Plaintiff obtained an arbitration award against PVS on March 24, 2004, PVS transferred its assets to Defendant Silicon Video, Inc., which in turn transferred those assets to Defendant Panavision Imaging, LLC.  (*Id*.)

**B.    Undisputed Material Facts**

Generally, the undisputed material facts of this case are as follows.  On July 27, 1998, Plaintiff and PVS entered into a contract pursuant to which PVS was to develop and produce certain video imaging technology for Plaintiff.  In April 2002, Plaintiff informed PVS that it was terminating its contract with PVS because PVS had breached that contract.  On March 27, 2003, PVS's assets were transferred to Defendant Silicon Video, Inc.  On July 8, 2003, Plaintiff filed for arbitration against PVS.  On December 15, 2003, Defendant Silicon Video, Inc.'s assets were

transferred to Defendant Panavision Imaging, LLC.  On March 24, 2004, Plaintiff obtained an

arbitration award against PVS in the amount of $2,870,897.43 for a breach of contract.

(*Compare* Dkt. No. 43, Plf.'s Rule 7.1 Statement [asserting referenced facts] *with* Dkt. No. 52,

Defs.' Rule 7.1 Response [admitting facts asserted by Plaintiff by not specifically controverting

them].)

       **C.**      **Summary of Parties' Motions**

      In its motion for summary judgment, Plaintiff argues that Defendants are liable under two

separate theories.  (Dkt. No. 43, Plf.'s Memo. of Law.)  First, Plaintiff argues that Defendants are

liable under what is called the "*de facto* merger" theory of successor liability, because (1) the

transactions in question amounted to a consolidation or merger of the companies, and (2)

Defendants Silicon Video, Inc., and Panavision were both "mere continuations" of PVS.  (*Id*. at

12-17.)  Second, Plaintiff argues that Defendants are liable under what is called the "fraudulent

transaction" theory of successor liability, because they transferred PVS's assets with the intent to

defraud Plaintiff.  (*Id*. at 18-19.)

      In their response to Plaintiff's motion, and their cross-motion for summary judgment

requesting the dismissal of Plaintiff's Complaint, Defendants argue that they cannot be liable

under a theory of successor liability for three reasons: (1) Plaintiff cannot recover from

Defendants under a theory of successor liability because Plaintiff did not experience a loss or

reduction of its position following the transfer of PVS's assets to Defendant Silicon Video, Inc.,

on March 27, 2003 (and the subsequent transfer of those assets to Defendant Panavision

Imaging, LLC, on December 15, 2003); (2) Plaintiff should not be permitted to recover from

Defendants for the transfer of PVS's assets because Defendants followed the loan, security and

statutory foreclosure process under New York Uniform Commercial Code § 9-620; and (3) Plaintiff has failed to establish a *de facto* merger.  (*See generally* Dkt. No. 52, Defs.' Memo. of Law, at 11-23.)  However, Defendants fail to squarely address Plaintiff's fraudulent-transaction theory of successor liability.  (*Id.*)

## II.    RELEVANT LEGAL STANDARDS

### A.    Standard Governing Motions for Summary Judgment

Under Fed. R. Civ. P. 56, summary judgment is warranted if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  In determining whether a genuine issue of material fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).[1]  In addition, "[the moving party] bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the . . . [record] which it believes demonstrate[s] the absence of any genuine issue of material fact." *Celotex v. Catrett*, 477 U.S. 317, 323-24 (1986).  However, when the moving party has met this initial responsibility, the nonmoving party must come

---

[1]        A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the novmoving party." *Anderson*, 477 U.S. at 248.  As a result, "[c]onclusory allegations, conjecture and speculation . . . are insufficient to create a genuine issue of fact." *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998) (citation omitted); *see also* Fed. R. Civ. P. 56(e)(2).  As the Supreme Court has explained, "[The nonmoving party] must do more than simply show that there is some metaphysical doubt as to the material facts." (citations omitted). *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986).  As for the materiality requirement, a dispute of fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248.  "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* (citation omitted).

4

forward with "specific facts showing a genuine issue [of material fact] for trial."  Fed. R. Civ. P. 56(e)(2).

What this burden-shifting standard means, when a non-movant has failed to respond to a movant's motion for summary judgment, is that "[t]he fact that there has been no [such] response . . . does not . . . [by itself] mean that the motion is to be granted automatically."  *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996).  Rather, practically speaking, the Court must (1) determine what material facts, if any, are *disputed* in the record presented on the movant's motion, and (2) assure itself that, based on those *undisputed* material facts, the law indeed warrants judgment for the movant.  *Champion*, 76 F.3d at 486; *Allen v. Comprehensive Analytical Group, Inc.*, 140 F. Supp.2d 229, 232 (N.D.N.Y. 2001) (Scullin, C.J.); N.D.N.Y. L.R. 7.1(b)(3).  However, the non-movant's failure to respond to the movant's motion for summary judgment lightens the movant's burden on the motion.

More specifically, where a non-movant has willfully failed to properly respond to a movant's factual assertions contained in its Statement of Material Facts (a/k/a its "Rule 7.1 Statement"), the factual assertions contained in that Rule 7.1 Statement will be accepted as true to the extent that those facts are supported by the evidence in the record.  *Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co.*, 373 F.3d 241, 243 (2d Cir. 2004); *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996); N.D.N.Y. L.R. 7.1(a)(3); N.D.N.Y. L.R. 56.2.[2]

---

[2]     *See* Fed. R. Civ. P. 83(b) (allowing district court to regulate motion practice in any manner consistent with federal law and the federal rules); Fed. R. Civ. P. 83, Advisory Committee Notes: 1995 Amendments ("The proscription of [not enforcing a local rule in a way that causes a party to lose any right because of a nonwillful failure to comply] is narrowly drawn . . . [and does not] affect the court's power to enforce local rules that involve more than mere matters of form–for example, a local rule requiring parties to identify evidentiary matters relied upon to support or oppose motions for summary judgment.").

Similarly, where a non-movant has willfully failed to respond to a movant's properly filed and facially meritorious memorandum of law (submitted in support of its motion for summary judgment), the non-movant is deemed to have "consented" to the legal arguments contained in that memorandum of law under Local Rule 7.1(b)(3).[3]  Stated another way, where a movant has properly filed a memorandum of law (in support of a properly filed motion for summary judgment), and the non-movant has failed to respond to that memorandum of law, the only remaining issue is whether the legal arguments advanced in the movant's memorandum of law are *facially meritorious*.[4]  A movant's burden in making legal arguments that are facially meritorious has appropriately been characterized as "modest."[5]

---

[3]      *See, e.g.*, *Beers v. GMC*, 97-CV-0482, 1999 U.S. Dist. LEXIS 12285, at *27-31 (N.D.N.Y. March 17, 1999) (McCurn, J.) (deeming plaintiff's failure, in his opposition papers, to oppose several arguments by defendants in their motion for summary judgment as consent by plaintiff to the granting of summary judgment for defendants with regard to the claims that the arguments regarded, under Local Rule 7.1[b][3]; *Devito v. Smithkline Beecham Corp.*, 02-CV-0745, 2004 WL 3691343, at *3 (N.D.N.Y. Nov. 29, 2004) (McCurn, J.) (deeming plaintiff's failure to respond to an "aspect" of defendant's motion to exclude expert testimony as "a concession by plaintiff that the court should exclude [the expert's] testimony" on that ground).

[4]      *Hernandez v. Nash*, 00-CV-1564, 2003 U.S. Dist. LEXIS 16258, at *7-8 (N.D.N.Y. Sept. 10, 2003) (Sharpe, M.J.) (citations omitted); *accord*, *Topliff v. Wal-Mart Stores East LP*, 04-CV-0297, 2007 U.S. Dist. LEXIS 20533, at *28 & n.43 (N.D.N.Y. March 22, 2007) (Lowe, M.J.); *Sledge v. Kooi*, 04-CV-1311, 2007 U.S. Dist. LEXIS 26583, at *28-29 & n.40 (N.D.N.Y. Feb. 12, 2007), *adopted by* 2007 U.S. Dist. LEXIS 22458 (N.D.N.Y. March 28, 2007) (McAvoy, J.); *Kele v. Pelkey*, 03-CV-0170, 2006 U.S. Dist. LEXIS 95065, at *5 & n.2 (N.D.N.Y. Dec. 19, 2006), *adopted by* 2007 U.S. Dist. LEXIS 4336 (N.D.N.Y. Jan. 22, 2007) (Kahn, J.).

[5]      *Ciaprazi v. Goord*, 02-CV-0915, 2005 WL 3531464, at *8 (N.D.N.Y. Dec. 22, 2005) (Sharpe, J.; Peebles, M.J.) (citation omitted); *accord*, *Saunders v. Ricks*, 03-CV-0598, 2006 WL 3051792, at *9 & n.60 (N.D.N.Y. Oct. 18, 2006) (Hurd, J., adopting Report-Recommendation); *cf. Race Safe Sys. v. Indy Racing League*, 251 F. Supp.2d 1106, 1109-1110 (N.D.N.Y. 2003) (Munson, J.) (reviewing whether record contradicted defendant's arguments, and whether record supported plaintiff's claims, in deciding unopposed motion to dismiss, under Local Rule 7.1[b][3]); *Wilmer v. Torian*, 96-CV-1269, 1997 U.S. Dist. LEXIS 16345, at *2 (N.D.N.Y. Aug. 29, 1997) (Hurd, M.J.) (applying prior version of Rule 7.1[b][3], but

Finally, implied in this burden-shifting standard is the fact that, where a nonmoving party

fails to adequately respond to a motion for summary judgment, a district court has no duty to

perform an independent review of the record to find proof of a factual dispute.[6]

    **B.**    **General Legal Standard Governing Plaintiff's Claim of Successor Liability**

Because this Decision and Order is issued primarily for the benefit of the parties to this

action, and because those parties have demonstrated a sufficient understanding of the general

legal standard governing Plaintiff's claim of successor liability for breach of contract, the Court

will not repeat that legal standard in its entirety in this Decision and Order, but will merely refer

the parties to the relevant portions of their memoranda of law.  (*See generally* Dkt. No. 43, Plf.'s

Memo. of Law, at 12-19; Dkt. No. 52, Defs.' Memo. of Law, at 11-23.)

**III.**    **ANALYSIS**

    **A.**    **Plaintiff's "*De Facto* Merger" Theory of Successor Liability**

For a "*de facto* merger" to occur, there must be continuity of the successor and

predecessor corporation as evidenced by the following: "(1) continuity of ownership; (2) a

---

recommending dismissal because of plaintiff's failure to respond to motion to dismiss *and* the reasons set forth in defendants' motion papers)*, adopted by* 1997 U.S. Dist. LEXIS 16340, at *2 (N.D.N.Y. Oct. 14, 1997) (Pooler, J.); *accord*, *Carter v. Superintendent Montello*, 95-CV-0989, 1996 U.S. Dist. LEXIS 15072, at *3 (N.D.N.Y. Aug. 27, 1996) (Hurd, M.J.), *adopted by* 983 F. Supp. 595 (N.D.N.Y. 1996) (Pooler, J.).

    [6]    *Amnesty Am. v. Town of W. Hartford*, 288 F.3d 467, 470 (2d Cir. 2002) (citations omitted); *accord*, *Lee v. Alfonso*, No. 04-1921, 2004 U.S. App. LEXIS 21432 (2d Cir. Oct. 14, 2004), *aff'g*, 97-CV-1741, 2004 U.S. Dist. LEXIS 20746, at *12-13 (N.D.N.Y. Feb. 10, 2004) (Scullin, J.) (granting motion for summary judgment); *Fox v. Amtrak*, 04-CV-1144, 2006 U.S. Dist. LEXIS 9147, at *1-4 (N.D.N.Y. Feb. 16, 2006) (McAvoy, J.) (granting motion for summary judgment); *Govan v. Campbell*, 289 F. Supp.2d 289, 295 (N.D.N.Y. 2003) (Sharpe, M.J.) (granting motion for summary judgment); *Prestopnik v. Whelan*, 253 F. Supp.2d 369, 371-372 (N.D.N.Y. 2003) (Hurd, J.).

cessation of ordinary business and dissolution of the predecessor as soon as practically and legally possible; (3) assumption by the successor of the liabilities ordinarily necessary for the uninterrupted continuation of the business of the predecessor; and (4) a continuity of management, personnel, physical location, assets, and general business operation." *Lumbard v. Maglia, Inc.*, 621 F. Supp. 1529, 1535 (S.D.N.Y. 1985) (citations omitted).  "Not all of these factors are needed to demonstrate a merger; rather, these factors are only indicators that tend to show a *de facto* merger." *Lumbard*, 621 F. Supp. at 1535 (citations omitted, and internal quotation marks omitted).

Here, after carefully considering the record evidence adduced by Plaintiff and Defendants during the pending motions, the Court concludes that sufficient record evidence exists from which a rational factfinder could conclude that a genuine issue of material fact exists regarding whether Defendants are liable to Plaintiff for breach of contract under a "*de facto* merger" theory of successor liability.

For example, in support of Plaintiff's argument that Defendants are liable to Plaintiff under such a theory of liability as a matter of law, Plaintiff cites the following record evidence, in part:[7] (1) Silicon Video, Inc.'s Executive Summary, showing the relevant groups of investors (Dkt. No. 43, at Ex. A); (2) the State of Delaware Entity Details for PVS, showing that PVS dissolved on December 31, 2003, soon after transferring its assets to Silicon Video, Inc. (Dkt. No. 43, at Ex. W); (3) a series of email exchanges between management and creditors of Silicon

_____

[7]        Because the disclosure of the substance of many, if not all, of the record materials cited in this Decision and Order is governed by a Stipulated Protective Order issued on August 8, 2006 (Dkt. No. 46, Part 2), the Court has, in this Decision and Order, endeavored to not disclose the details of those materials.

Video, Inc. (Dkt. No. 43, at Exs. R and S); (4) Silicon Video, Inc.'s announcement of acquisition

of PVS assets, dated June 27, 2003 (Dkt. No. 43, at Ex. N); (5) an email message from David

Ahlers to Terry Zarnowski, dated August 14, 2003, indicating a continuity of management,

personnel, location and operations of PVS (Dkt. No. 43, at Ex. R); (6) express contracts between

suppliers of Panavision Imaging, LLC, and PVS-Silicon Video, Inc. (Dkt. No. 43, at Ex. V); (7)

a presentation by Silicon Video, Inc., to Panavision Imaging, LLC, indicating that Silicon Video,

Inc., has retained PVS's core group of personnel (Dkt. No. 43, at Ex. M); and (8) a letter from

Silicon Video, Inc., to David Ahlers, dated December 26, 2003 (Dkt. No. 43, at Ex. U).

Similarly, in support of their argument that they are not liable to Plaintiff under such a

theory of liability as a matter of law, Defendants cite the following record evidence, in part: (1)

the Declaration of David Ahlers, asserting that each lender's ownership of Silicon Video, Inc.,

was proportionate to, and based solely upon, the amount of that lender's loan to PVS (Dkt. No.

52, Ahlers Decl., at ¶ 16-17); (2) the Declaration of David Ahlers, showing that the total

ownership overlap between PVS and Silicon Video, Inc., was under 3.5% and that none of the

holders of the remaining 95.6% of PVS received stock of Silicon Video, Inc., in the foreclosure

(Dkt. No. 52, Ahlers Decl., at ¶ 18-19); (3) the Declaration of Steven Fasman, asserting that no

part of Panavision Imaging, LLC, is owned by any former shareholder of PVS or Silicon Video,

Inc. (Dkt. No. 52, Fasman Decl., at ¶ 4); (4) the Declaration of David Ahlers, asserting that

Silicon Video, Inc., told creditors that it would not, and did not, assume the liabilities of PVS

(Dkt. No. 52, Ahlers Decl., at ¶ 30); (5) the Declaration of David Ahlers, asserting that Silicon

Video, Inc., was in a different and much more limited business than was PVS, with fewer

customers and different lines of business (Dkt. No. 52, Ahlers Decl., at ¶ 32); (6) the Declaration

9

of David Ahlers, asserting that all of PVS's space in Fairport, New York, was given up after the

takeover by Silicon Video, Inc. (Dkt. No. 52, Ahlers Decl., at ¶ 33); (7) the Declaration of

Steven Fasman, asserting that Panavision Imaging, LLC, is and always has been located in New

York, New York (Dkt. No. 52, Fasman Decl., at ¶ 6); and (8) the Declaration of Steven Fasman,

asserting that the few former employees of Silicon Video, Inc., who later worked at Panavision

Imaging, LLC, worked "solely in technical and administrative positions[,] and none became a

member of Panavision's management team" (Dkt. No. 52, Fasman Decl., at ¶ 7).

For these reasons, the Court denies both Plaintiff's motion for summary judgment and

Defendants' cross-motion for summary judgment to the extent that they are premised on the

absence of a genuine issue of material fact regarding the "*de facto* merger" theory of successor

liability.

### B.      Plaintiff's Fraudulent-Transaction Theory of Successor Liability

In support of their fraudulent-transaction theory of successor liability, Plaintiff adduces

the following record evidence, in part: (1) a letter from David Ahlers and Philip Proujansky to

PVS, dated February 25, 2003, referring to a Security Agreement that PVS entered into with

Cayuga on September 23, 2002 (after Perceptron, Inc., had informed PVS in April 2002 that it

was terminating its contract with PVS because PVS had breached that contract) (Dkt. No. 43, at

Ex. E); (2) an email message from a principal of Cayuga to, *inter alia*, David Ahlers, Philip

Proujansky, and Jennifer Tegan, dated February 28, 2003, discussing an upcoming meeting

regarding the sale of PVS (Dkt. No. 43, at Ex. F); (3) an email message from David Ahlers, to

Jennifer Tegan, Philip Proujansky, and Hank Watson, dated March 11, 2003, regarding the sale

of PVS's assets (Dkt. No. 43, at Ex. G); (4) a letter from a former law firm to Silicon Video, Inc.,

10

and Cayuga, dated August 5, 2003 (after Perceptron Inc. had filed for arbitration against PVS, on July 8, 2003), opining on the conveyance (Dkt. No. 43, at Ex. Q); (5) email messages from Terry Zarnoswki (of Silicon Video, Inc. and formerly of PVS) to various other individuals, dated August 13, 2003, and August 14, 2003, regarding the debts and liabilities of PVS (Dkt. No. 43, at Ex. R); (6) an email message from David Ahlers to Terry Zarnoswki, with copies to Jennifer Tegan, Philip Proujansky, and Jeff Zarnowski (of Silicon Video, Inc. and formerly of PVS), dated August 14, 2003, regarding the sale of PVS's assets (Dkt. No. 43, at Ex. R); (7) a due diligence list from Panavision Imaging, LLC, to Silicon Video, Inc., dated October 10, 2003, requesting financial information about PVS during Panavision Imaging, LLC's acquisition of the assets of Silicon Video, Inc. (Dkt. No. 43, Ex. Z); and (8) an email message from David Ahlers, dated November 13, 2003, regarding liability for the debts of PVS (Dkt. No. 43, at Ex. S).

In response, Defendants do not squarely address Plaintiff's fraudulent-transaction theory of successor liability in their memorandum of law or record evidence.  (*See generally* Dkt. No. 52, Defs.' Memo. of Law [focusing only on Plaintiff's *de facto* merger argument]; Dkt. No. 52, Ahlers Decl., at ¶¶ 1-41 [generally stating the terms and circumstances of the agreement between PVS and Defendant Silicon Video, Inc., but failing to deny allegations of fraud]; Dkt. No. 52, Zarnowski Decl., at ¶¶ 1-26 [also generally stating the terms and circumstances of the agreement between  PVS and Defendant Silicon Video, Inc., but failing to deny allegations of fraud]; Dkt. No. 52, Galt Decl., at ¶¶ 1-7 [generally stating the terms and circumstances of Defendant Panavision's acquisition of Silicon Video, Inc. assets but failing to deny allegations of fraud]; Dkt. No. 52, Fasman Decl., at ¶¶ 1-8 [stating that no part of Defendant Panavision is owned by any former shareholder of PVD or Defendant Silicon Video, Inc., but failing to deny allegations of fraud].)

11

Instead, the only material argument asserted by Defendants in their memorandum of law appears to be that, after Plaintiff terminated its contract with PVS in April 2002, and communicated with PVS in June 2002, Plaintiff did not pursue a claim against PVS until July 2003.  (Dkt. No. 52, Defs.' Memo. of Law, at 5, 10.)[8]  Defendants support that factual assertion with an accurate record citation.  (Dkt. No. 52, Zarnowski Decl., at ¶¶ 8-9.)  This evidence appears to stand in contrast to Plaintiff's argument that, by September 2002, it had announced its intent to seek recovery for PVS's breach of contract, which is not supported by any specific citation to the record.  (Dkt. No. 52, Rule 7.1 Statement, at ¶ 30.)  From the Court's perspective, the only possible reconciliation between the parties' positions on this issue is that Plaintiff gave notice of its intent to pursue a claim against PVS in July 2002.  However, unfortunately, neither party has provided a description of the communication of July 2002 (nor has either party provided a copy of the April 2002 notice of termination of contract).  Simply stated, the Court finds that, based on the current record, a genuine issue of material fact exists regarding whether Defendants possessed sufficient knowledge of Plaintiff's claim when PVS's assets were transferred in March 2003.

For these reasons, the Court denies both Plaintiff's motion for summary judgment and Defendants' cross-motion for summary judgment to the extent that they are premised on the absence of a genuine issue of material fact regarding the fraudulent-transaction theory of successor liability.

------

[8]     The Court construes the point of this factual assertion to be that, because there was no notice of claim until July 2003, there was no intent to defraud when PVS's assets were transferred in March 2003.

C.     **Defendants' Remaining Arguments in Support of Their Cross-Motion**

Finally, in their cross-motion for summary judgment, Defendants argue that there is no successor liability for two reasons: (1) Plaintiff did not experience a loss or reduction of its position following the transfer of PVS's assets to Defendant Silicon Video, Inc., on March 27, 2003 (and the subsequent transfer of those assets to Defendant Panavision Imaging, LLC, on December 15, 2003); and (2) in transferring PVS's assets, Defendants followed the loan, security and statutory foreclosure process under New York Uniform Commercial Code § 9-620.  (*See generally* Dkt. No. 52, Defs.' Memo. of Law, at 11-18.)

The Court rejects Defendants' first argument.  Under the circumstances, Plaintiff's successor-liability claim would not be precluded by the fact that Plaintiff's status as a secured or unsecured creditor was not diminished by the transfer, or that Plaintiff had not obtained a judgment prior to the transfer.[9]  Rather, what appears material under the circumstances is the following: (1) whether there was continuity of the successor and predecessor corporation as evidenced by the four factors described above in Part III.A. of this Decision and Order, and (2) whether Defendants possessed sufficient knowledge of Plaintiff's claim (or imminent claim) when PVS's assets were transferred in March 2003.

Moreover, the Court rejects Defendants' second argument essentially for the reasons stated by Plaintiff in its Reply Memorandum of Law.  (*See* Dkt. No. 54, Part 4, at 13-14 [Plf.'s

---

[9]     The Court notes that liability for a fraudulent transaction may be imposed (setting aside the presence of other "badges of fraud") if there exists "the transferor's knowledge of a creditor's claims, or claims so likely to arise to be certain, and the transferor's inability to pay them."  *Pen Pak Corp. v. LaSalle Nat. Bank of Chicago*, 658 N.Y.S.2d 407, 408 (N.Y. App. Div., 2d Dept. 1997); *see also MFS/Sun Life Trust-High Yield Series v. Van Dusen Airport Servs. Co.*, 910 F. Supp. 913, 935 (S.D.N.Y. 1985) (describing relevant "badge of fraud" as being "the transferor's knowledge of the creditor's claim and the transferor's inability to pay it") (collecting cases).

Reply Memo. of Law].)  More specifically, the Court is not persuaded that following the loan,

security and statutory foreclosure process under the New York Uniform Commercial Code

automatically precludes the imposition of successor liability on Defendants.  *See Miller v. Forge*

*Mench Partnership Ltd.*, 00-CV-4314, 2005 WL 267551, at *12 (S.D.N.Y. Feb, 2, 2005)

("[C]ourts have rejected the view that a foreclosure sale conducted under section 9-504 of the

UCC precludes the imposition of successor liability.") (Mukasey, J.) (citations omitted).[10]

---

[10]      *See also Ed Peters Jewelry Co. v. C & J Jewelry Co.*, 124 F.3d 252, 267 (1st Cir. 1997) ("[E]xisting case law overwhelmingly confirms that an intervening foreclosure sale affords an acquiring corporation no automatic exemption from successor liability."); *Glentel, Inc. v. Wireless Ventures, LLC*, 362 F. Supp. 2d 992, 1004-05 (N.D. Ind. 2005) ("Defendants have failed to provide, and the Court has not discovered, authority that supports the preclusion of a claim of successor liability against a purchaser of assets at a sale under the UCC. Therefore, Glentel's claim of successor liability is not precluded by Ind.Code Section 26-1-9.1-617 and may proceed on the merits."); *EEOC v. SWP, Inc.*, 153 F. Supp.2d 911, 925 (N.D. Ind. 2001) ("[T]he question of whether RBK owes for the judgment entered against SWP, as SWP's successor, is in no way affected by . . . UCC § 9-504(4) . . . ."); *Fiber-Lite Corp. v. Molded Acoustical Products of Easton, Inc.*, 93-CV-4056, 1994 WL 541395, at *9 (E.D. Pa. Sept. 29, 1994) (directly rejecting defendant's contention that it could not be responsible for alleged predecessor's commercial debt because it acquired assets in a U.C.C. § 9-504 foreclosure sale); *Glynwed, Inc. v. Plastimatic, Inc.*, 869 F. Supp. 265, 273-74 (D. N.J. 1994) ("Despite [defendant's] predictions of the gloom and doom that will descend upon the area of commercial law if the Court permits [plaintiff] to proceed on its theory, nothing in the UCC supports [defendant's] argument that the 9-504 sale provides a safe harbor against successor liability claims."); *cf. Kaiser Foun. Health Plan of the Mid-Atl. States v. Clary & Moore, P.C.*, 123 F.3d 201, 207-08 (4th Cir. 1997) (rejecting defendant's argument that, because the assets of a law firm transferred at a public foreclosure sale, the sale was then necessarily a bona fide arm's-length transaction and beyond reproach); *Stoumbos v. Kilimnik*, 988 F.2d 949, 962 (9th Cir. 1993) ("The mere fact that the transfer of assets involved foreclosure on a security interest will not insulate a successor corporation from liability where other facts point to continuation."); *Upholsterers' Int'l Union Pension Fund v. Artistic Furniture*, 920 F.2d 1323, 1325 (7th Cir. 1990) (permitting successor liability claim to go forward in ERISA context despite alleged successor having purchased assets of alleged predecessor at foreclosure sale); *Premier Pork, LC v. Westin, Inc.*, 07-CV-1161, 2008 WL 724352, at *1, 2, 5 (D. N.J. Mar. 17, 2008) (holding claim of successor liability following a "friendly foreclosure" was sufficient to state a claim); *Fletcher Cyclopedia of Corporations* § 7122, at 254 (Perm. Ed. 1999) ("Successor liability may be imposed even where the business assets were purchased pursuant to a foreclosure sale.").

For these reasons, the Court denies Defendants' cross-motion for summary judgment to the extent that it is premised on these two arguments.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for summary judgment (Dkt. No. 43) is **<u>DENIED</u>**; and it is further

**ORDERED** that Defendants' cross-motion for summary judgment (Dkt. No. 52) is **<u>DENIED</u>**; and it is further

**ORDERED** that counsel are directed to appear on **SEPTEMBER 29, 2010 at 3:00 p.m.** in chambers for a pretrial conference, at which counsel are directed to appear with settlement authority, and in the event that the case does not settle, trial will be scheduled at that time. If plaintiff's counsel would like to participate via telephone conference, counsel should make that request in writing. Plaintiff is further directed to forward a written settlement demand to defendants no later than **SEPTEMBER 10, 2010**, and the parties are directed to engage in meaningful settlement negotiations prior to the 9/29/10 conference.

Dated: August 27, 2010
      Syracuse, New York

Hon. Glenn T. Suddaby
U.S. District Judge